**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
     **JUDGE**

### LETTER OPINION

July 6, 2011

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065
    (*Attorney for Plaintiff*)

Jennifer Susan McMahon
Office of the U.S. Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, New York 10278
    (*Attorney for Defendant*)

     **RE:**   **Ingram v. Commissioner of Social Security**
              **Civ. No. 10-4408 (WJM)**

Dear Counsel:

     Plaintiff Mary Ingram ("Ingram" or "Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits.  On appeal to this Court, Plaintiff contends that the Commissioner's administrative decision disallowing her claim is not supported by substantial evidence and must be reversed or remanded.  For the reasons that follow, the Commissioner's

decision is **AFFIRMED**.

I.  BACKGROUND

Plaintiff Ingram, 58 years of age at the time of her initial application, applied for supplemental security income benefits on December 18, 2007, alleging disability as of January 8, 2007. (Administrative Transcript, hereafter "Tr.," 10, 94.)  The application was denied at the initial level and again upon reconsideration. (*Id.*)  On December 21, 2009, a hearing was held before Administrative Law Judge ("ALJ") Leonard O'Larsch. (*Id.* at 7, 10.)

At the hearing before the ALJ, Plaintiff testified that she worked as a telephone solicitor for a nation-wide chiropractic service provider from December 2003 to January 2007. (*Id.* at 24-25.)  The job required her to "sit all day," talking and typing. (*Id.* at 25.)  She regularly worked for about seven and a half hours per day. (*Id.*)  Ingram reported that she could no longer do her telemarketing job because her neck would become too stiff from arthritis and sitting in the same position for so long. (*Id.* at 43.)  Ingram also testified that she could not sit for so long every day because of pinched nerves and pulled muscles in her neck and spine. (*Id.* at 43.)  In 2007, after leaving her telemarketing job, she was employed as a retail sales person. (*Id.* at 24.)  Ingram testified that she left the telemarketing job because she was searching for more income and no longer wished to sit for such a long interval each day. (*Id.* at 26.)  She stated that at the time she switched jobs she was suffering from migraines and stiffness throughout her neck and extremities. (*Id.*)  Ingram's new job allowed her more freedom of movement but she soon developed swelling in her feet, resulting in frequent absences. (*Id.* at 26-27.)  She testified that she attempted to keep working but was unable to do so because of her declining health. (*Id.* at 28.)

Ingram also detailed her current and past medical history.  She explained that she had been experiencing weekly migraines for a number of years and had suffered several heart attacks. (*Id.* at 30-31.)  Her doctors had prescribed muscle relaxers and several different heart medications. (*Id.* at 31.)  Ingram explained that her heart condition causes her to experience both pain in her back and chest and numbness in her hands and legs. (*Id.* at 34.)  Despite these ailments, Ingram's daily activities include reading, knitting, and watching television. (*Id.* at 37-38.)  Ingram testified that she can walk for three blocks at a time, carry 10-15 pounds, and sometimes has trouble bending. (*Id.* at 39-40.)  She is able to sit for 15-20 minutes and stand for 10-15 before she has pain. (*Id.* at 44.)

On a Function Report completed on January 18, 2008, Ingram reported that she is able to shower and make her breakfast and lunch for work on a daily basis. (*Id*. at 124.)  Ingram also reported being able to cook her own meals, but she has some difficulty standing at the stove for long periods of time. (*Id.* at 126.)  She stated that she cleans weekly, washes clothes bi-weekly, but cannot iron. (*Id.* at 127.)  Ingram reported that she

can drive herself, but does not do so when her neck is too stiff. (*Id.* at 127.) Ingram stated that she drives herself 45 minutes away to church each week. (*Id.* at 37-38.) Ingram also noted that she goes to doctor's appointments once or twice a week. (*Id.* at 126.) She also reported that she does her grocery shopping weekly. (*Id.*)

The ALJ also considered various medical records, reports, and professional evaluations submitted by Plaintiff. On January 29, 2007, Plaintiff was admitted to the hospital for chest pain and possible acute coronary syndrome. (*Id.* at 168-169.) After undergoing several tests, including a treadmill test, Plaintiff was discharged with a diagnosis of hypertension, hypertensive heart disease and atypical chest pain on February 1, 2007. (*Id.* at 167-188.) Plaintiff was directed to continue using a proton pump inhibitor. (*Id.*)

On November 29, 2007, Plaintiff was evaluated for hypertension by Dr. Orlando Mills. (*Id.* at 202.) After examining Plaintiff's neck, lymphatic system, respiratory system, cardiovascular system, extremities, abdomen and neurological function, Dr. Mills concluded they were all unremarkable. (*Id.*) Dr. Mills concurred in the diagnosis of acute hypertension from the hospital and prescribed Tropol XL. (*Id.*) Dr. Mills again evaluated Plaintiff for hypertension on January 25, 2008, and noted that Plaintiff had normal cervical range of motion with no pain, no knee effusion and normal range of motion in both knees. (*Id.* at 200.) Dr. Mills assessed essential hypertension and noted limb pain. (*Id.*) He prescribed Prilosec, Zantac, and Lisinopril. (*Id.*) A subsequent report from Dr. Mills, produced on the same date, reported that his diagnosis of Plaintiff included cervical arthritis, bilateral shoulder tenderness, back pain, and bilateral knee arthritis with cartilage pain. (*Id.* at 190.) He further noted that Plaintiff was limited to lifting or carrying up to 20 pounds occasionally, standing or walking for less than two hours per day, sitting for less than six hours per day and had no limitations for pushing or pulling. (*Id.*) She also had high blood pressure and esophageal reflux. (*Id.*)

On November 20, 2009, Dr. Mills completed a questionnaire at the request of Plaintiff's counsel. (*Id.* at 228-32.) In this report, Dr. Mills indicated that Plaintiff could lift or carry up to 10 pounds and could stand or walk for one half hour at a time for a total of two hours in an eight-hour day. (*Id.* at 229-230.) Dr. Mills further noted that Plaintiff could sit for two-hours at a time for a total of four hours in an eight-hour day. (*Id.* at 230.) On the questionnaire, Dr. Mills indicated that Ingram's reaching, pushing, pulling and seeing were unaffected by her impairments, but cautioned that she should avoid contact with heights, moving machinery, temperature extremes, dust, noise, humidity and vibration. (*Id.*)

On July 2, 2008, Plaintiff was evaluated by a consultative physician, Dr. Mark Sisskin. (*Id.* at 192-93.) Dr. Sisskin's impression was that Ingram suffered from osteoarthritis and chronic joint pain, elevated glucose consistent with diabetes mellitus, hyperuricemia, atypical chest pain not consistent with coronary artery disease, insomnia,

acute visual acuity, and hypertension under fair control. (*Id.* at 193.) She was able to perform gross and fine movements except with her knees. (*Id.*)

Plaintiff's records were also reviewed by Dr. Bustos, a state agency doctor, on August 6, 2008. (*Id.* at 206.) Dr. Bustos assessed that Plaintiff could lift or carry up to 20 pounds frequently, or carry 10 pounds, stand or walk for six hours out of an eight hour day, sit about six hours per day and had unlimited ability to push or pull. (*Id.* at 205-212.) Dr. Bustos considered the evaluations of both Dr. Mills and Dr. Sisskin in making his determinations. (*Id.*) On September 29, 2008, Dr. Schoen, another state agency doctor, also assessed Plaintiff's file. Dr. Schoen assessed that Ingram could occasionally lift or carry up to 20 pounds, could frequently lift or carry up to 10 pounds, stand or walk for at least two hours in an eight-hour day, sit for approximately six hours in an eight-hour day, and was unlimited in ability to push or pull. (*Id.* at 216.) Dr. Schoen noted that Ingram should never climb ladders or crouch, but could frequently crawl, and could occasionally balance, stoop, kneel and climb stairs. (*Id.* at 17.) Dr. Schoen also cautioned that Ingram should avoid extreme weather conditions like heat and cold.

On September 30, 2009, an MRI of Plaintiff's cervical spine revealed "C5-6 and C6-7 broad based disc bulges and unconvertebral hypertrophy contributing to mild-to-moderate central canal and bilateral neural foraminal stenosis at their respective levels." (*Id.* at 226.) It also showed straightening with partial reversal of the normal cervical lordosis. (*Id.*) A lumbar spine MRI showed L5-S1 broad-based disc bulging mildly narrowing the bilateral neural foramen. (*Id.*) On December 3, 2009, Plaintiff had an electrodiagnostic study of her upper extremities which was suggestive of mild carpal tunnel syndrome. (*Id.* at 233-238.) The same test of the lower extremities showed a bilateral lumbosacral radiculopathy at L4 and on the left of S1. (*Id.* at 239-244.)

After considering the testimony and medical evidence, the ALJ issued his opinion on January 7, 2010, finding that Plaintiff has not been under a "disability" within the meaning of the Social Security Act. Specifically, the ALJ made the following determinations, among others: (1) Plaintiff has the following severe impairments: cervical spine degenerative disease, hypertension, bilateral knee pain syndrome and obesity; (2) Plaintiff does not have a combination of impairments that meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) Plaintiff has the residual functional capacity to perform a full range of sedentary work; (4) Plaintiff has no significant non-exertional functional limitations; and (5) Plaintiff is capable of performing past relevant work as a telephone solicitor. (*Id.* at 13-15.) The ALJ gave great weight to Plaintiff's report that she can conduct her daily activities despite her complaints, and to the reports by the state agency doctors. The ALJ found that Dr. Mill's assessments were inconsistent with his examination notes and therefore afforded these assessments little weight. (*Id.* at 14.)

Plaintiff requested review by the Appeals Council, which was denied on July 1, 2010, and this action followed.  Plaintiff alleges the ALJ made the following errors when denying her claim: (1) failure to include Plaintiff's hypertensive heart disease, hiatal hernia, heart murmur, edema, and carpal tunnel syndrome as severe impairments; (2) failure to combine all of Plaintiff's severe impairments to determine medical equivalence; (3) failure to include obesity as a severe impairment when comparing all of Plaintiff's impairments to determine medical equivalence; (4) failure to give Dr. Mill's evaluations proper and adequate weight; and (5) alleged failure of the ALJ to perform a "function by function" analysis with the duties of past work.

## II.     DISCUSSION

### A.     Standard of Review

The district court has plenary review of the ALJ's application of the law.  *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  On the other hand, the factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S. § 405(g)).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck*, 181 F.3d at 431.  The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).  Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

### B.     The Five-Step Sequential Analysis

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits.  20 C.F.R. §§ 404.1520, 416.920.  In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the ALJ moves to step two to determine if the claimant's alleged impairments qualify as "severe."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant has a severe impairment or impairments, the ALJ inquires in step three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.  If so, the claimant is

automatically eligible to receive benefits (and the analysis ends); if not, the ALJ moves on to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### C.  ALJ's Alleged Error at "Step Two" of the Analysis in Excluding Certain Symptoms and Diagnoses from his Evaluations of Plaintiff's Impairments

Plaintiff argues that at Step Two, the ALJ left out several conditions that the Plaintiff complained of, and that these omissions "short change" the Plaintiff. Plaintiff alleges that the ALJ failed to consider: (1) acute coronary syndromes; (2) hypertensive heart disease; (3) hiatal hernia; (4) heart murmur; (5) edema of the left leg; and (6) carpal tunnel syndrome. Further, Plaintiff argues that the ALJ failed to appropriately classify her disc bulging at L5-S1 as a severe impairment, nor did he explain why it was not a severe impairment under the regulations.

Under the regulations, an impairment is not considered severe if it does not significantly limit claimant's physical and mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *McCrea v. Comm'r of Soc. Sec*., 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm'r of Social Security*, 347 F.3d 541, 546-7 (3d Cir. 2003). Here, the ALJ found that Ingram had not met her burden regarding the complaints mentioned above. Regarding the acute coronary syndromes and heart murmur, the ALJ noted that Ingram was admitted to the hospital for that *possible* condition, but was never *diagnosed* with it. (Tr. 14.) Additionally, her testimony that she has had several heart attacks was not supported by any documentation. (*Id.*) Further, the ALJ noted that Ingram does suffer from hypertension, but that it is controlled by medication. (*Id.* at 14, 124-132.) Regarding her complaint of migraine headaches, the ALJ noted that after an examination of the record there was "no diagnosis or treatment of such." (*Id.* at 14.)

Similarly, the ALJ noted that the findings of mild carpal tunnel syndrome were "inconclusive" and that Dr. Sisskin reported that Ingram was able to perform a full range of gross and fine hand movements. (*Id.*) Further, the ALJ explained that he would not classify Plaintiff's L5-S1 disc bulge as "severe" because Dr. Mills reported that the spine was properly aligned and there was no evidence of spinal impingement. (*Id.* at 226-28.) The ALJ also noted that Ingram testified that she can conduct normal

daily activities despite her complaints, and additionally, that Dr. Mills reported that her pain can be controlled by over-the-counter medication. (*Id.* at 14.)

The ALJ did not err at Step Two in determining Plaintiff's aforementioned conditions were not severe. Since "allegations of pain and other subjective symptoms must be supported by medical evidence," *Hartranft v. Apfel*, 181 F.3d 358, 372 (3d Cir. 1999), the ALJ correctly weighed Ingram's subjective claims of pain and symptoms against the objective evidence, and properly identified which of her conditions were "severe impairments" based on all the medical evidence provided.

### D. ALJ's Alleged Failure to Adequately Combine and Compare Plaintiff's Impairments, including Obesity, to Determine Medical Equivalence at Step Three

Plaintiff next argues that the ALJ failed to combine all of Ingram's severe impairments to determine medical equivalence. (Pl.'s Br. at 9.) Plaintiff further argues that this error is made more grievous because the ALJ allegedly found Plaintiff suffered from obesity but failed to discuss obesity at Step Three of the analysis in order to determine medical equivalence. (*Id.*) Ingram stands five foot five inches tall and weighs 236 pounds.

The ALJ's findings state that, "the claimant does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments." (Tr. 12 (emphasis added).) The ALJ specifically states that he considered the impairments in "combination" and found that they do not meet or medically equal a listing. In his analysis of Ingram's impairments, the ALJ discussed how Ingram's complaints of neck and back pain do not meet the requirements for spinal disorder listings. (*Id.*) Further, the ALJ noted that Plaintiff's complaints of joint pain are not supported by any documented musculoskeletal abnormalities in the medical evidence. (*Id.*) The ALJ also noted that Plaintiff's hypertension is controlled by medication. (*Id.*) The ALJ then concluded that the evidence supporting Plaintiff's alleged symptoms was "not compatible" with any of the potentially applicable listed impairments. (*Id.* at 12-13.)

With regard to Ingram's alleged obesity, first and foremost, there is no mention of a diagnosis of "obesity" in the medical records. There is only a mention by Dr. Mills that Ingram stood 5'5" and weighed 238 pounds. (*Id.* at 193.) Plaintiff relies on Social Security Ruling 02-1P which states, in relevant part, "[b]ecause there is no listing for obesity, we find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, 'meets' the requirements of a listing." Here, Ingram's other impairments do not meet a listing on their own. Plaintiff further argues that her obesity, in combination with her other impairments, is severe enough to meet a listing. However, the medical records contain no evidence that Plaintiff's obesity contributed to the severity of her impairments. Plaintiff lastly argues that her obesity is

enough, in and of itself, to medically equal a listing. SSR 02-1P states, however, "[w]e may also find that obesity by itself is medically equivalent to a listed impairment…for example, if the obesity is at such a level that it results in an inability to ambulate." Here, Ingram's own testimony indicates that she is able to perform daily functions despite her complaints, and therefore her ability to ambulate is not effected by her obesity as she contends it is. (Tr. 14.) As such, the ALJ did not err in analyzing Ingram's impairments—including obesity—and determining that even in combination they did not meet a listing.

### E. ALJ's Alleged Failure to give Adequate Weight to Testimony by Dr. Mills.

Plaintiff contends that the ALJ did not give adequate weight to the testimony of her treating physician, Dr. Mills, and instead favored the State Agency Medical Consultants who "neither examined nor treated the Plaintiff, and in fact never laid eyes on her." (Pl.'s Br. at 15.) Plaintiff's argument is flawed, however, because controlling weight is only given to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in a case record." 20 C.F.R. 416.927(d)(2). Furthermore, an ALJ may discount a treating physician's assessment in light of evidence that the impairment exists but is less severe than assessed. *Lysak v. Comm'r of Soc. Sec.*, No. 09-184, 2009 U.S. Dist. LEXIS 103101, at *32 (D.N.J. Nov. 4, 2009).

Here, the ALJ analyzed all relevant medical opinions, and found that Dr. Mill's evaluations of Ingram were not "consistent with his examination and treatment notes." (Tr. 14.) In January 2008 Dr. Mills assessed that Ingram was limited to lifting and carrying up to 20 pounds occasionally; standing and walking less than 2 hours; and sitting less than 6 hours in a workday. (*Id.* at 189-92.) In November of 2009, he assessed that Ingram was limited to lifting and carrying up to 10 pounds; sitting up to 4 hours; and standing and walking up to 2 hours in a workday with additional non-exertional limitations. (*Id.* at 228-33.) Dr. Mill's treatment notes, however, indicate no cardiac signs or symptoms, unremarkable neck examination with normal range of motion of the cervical spine, no knee effusion and normal meniscal tests, and unremarkable range of motion in both knees. (*Id.* at 198-205.) The ALJ further relied on extensive evidence of Ingram's daily life and the activities she is able to complete in light of her complaints, and found that evidence to be inconsistent with Dr. Mill's assessments and to be more consistent with the reports of the State Agency doctors. (*Id.* at 14.) Therefore, the ALJ did not err in determining not to give the doctor's opinions probative weight in light of all the medical evidence on the record.

### F. ALJ's Alleged Failure to Perform a "Function by Function" Analysis at Step Four.

8

Plaintiff argues that the ALJ erred in denying her benefits by finding she had the ability to perform past work without first performing a "function by function" analysis of the duties of that past work. (Pl.'s Br. at 15). In making this contention, Ingram relies on *Stevenson v. Heckler*, 624 F.Supp. 1189 (E.D. Pa. 1986), which states that in order to find a social security applicant capable of performing past relevant work, the ALJ must first discuss and compare the relationship between the established medical and mental impairments suffered by the applicant with the specific requirements of her former job. Further, Plaintiff points to Social Security Ruling 82-62 which states, "[d]etermination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reasons behind this inability, (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work, and (3) in some cases, supplemental corroborative information from other sources such as employers on the requirements of the work as generally performed in the economy.

Plaintiff argues that the ALJ makes the comparison between RFC and past relevant work but fails to factor in obesity, Ingram's carpal tunnel syndrome, and left leg edema. Plaintiff is incorrect in these assertions. The ALJ found that Ingram was able to do her past work as a telemarketer and therefore is not disabled. (Tr. 15.) The ALJ specifically explained that based on Ingram's testimony, he found that her past work as a telemarketer required her to use a telephone and a computer and sit for approximately 7.5 hours per day. (*Id.*) She lifted and carried less than ten pounds, and made appointments for chiropractors and explained the services the company provided over the phone to clients. (*Id.* at 132-140.) The ALJ further explained that the position was classified as sedentary under the DOT. (*Id.* at 15.) Based on Ingram's testimony of what her past work included, the ALJ then looked to the medical reports and the entire record in determining that Ingram could still perform the full range of sedentary work, including her past telemarketing work. (*Id.*) Therefore, the ALJ adequately performed a "function by function" analysis under the guidelines and reached a conclusion based on substantial evidence in the record.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

9